IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN CHRISTIANS, Individually and on Behalf of All Others Similarly Situated, | * * * | |
| Plaintiff, | * * | |
| v. | * * | 3:17-cv-00002 |
| KEMPHARM, INC.; TRAVIS C. MICKLE; GORDON K. JOHNSON; R. LADUANE CLIFTON; SVEN GUENTHER; CHRISTAL M.M. MICKLE; DANNY L. THOMPSON; MATTHEW R. PLOOSTER; RICHARD W. PASCOE; JOSEPH B. SALURI; DAVID S. TIERNEY; COWAN AND COMPANY, LLC; RBC CAPITAL MARKETS, LLC; CANACCORD GENUITY, INC.; and OPPENHEIMER & CO., INC. | * * * * * * * * * * | ORDER |
| Defendants. | * * | |

Before the Court is Plaintiff Kevin Christians's Motion to Remand, filed on February 13,

2017.  Clerk's No. 22.  Defendants KemPharm, Inc., Travis C. Mickle, Gordon K. Johnson,

R. LaDuane Clifton, Sven Guenther, Christal M.M. Mickle, Danny L. Thompson, Matthew R.

Plooster, Richard W. Pascoe, Joseph B. Saluri, and David S. Tierney (collectively

"Defendants"[1]) filed a brief in opposition to Plaintiff's Motion on February 27, 2017.  Clerk's

No. 24.  Plaintiff filed a reply on March 7, 2017.  Clerk's No. 28.  At the parties' request, this

Court heard oral argument on the motion on April 27, 2017.  Clerk's No. 37.  The matter is fully

submitted.

---

[1] Defendants Cowen and Company, LLC; RBC Capital Markets, LLC; Canaccord Genuity Inc.; and Oppenheimer & Co. Inc. did not submit separate briefing on this motion, but they have consented to removal.  *See* Clerk's No. 19.

## I.  BACKGROUND

On November 4, 2016, Plaintiff filed a Class Action Petition at Law in Iowa District Court for Johnson County.[2]  Clerk's No. 2-1 at 1–24.  In the Petition, Plaintiff alleged violations of three discrete sections of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77a *et seq.*  Clerk's No. 2-1 at 19–23.  The Petition alleged no claims under state law.  *Id.*  On January 12, 2017, Defendants filed a notice of removal of the action to this Court.  Clerk's No. 2.  On February 13, 2017, Plaintiff filed this Motion for Remand, which challenges the propriety of removal pursuant to 15 U.S.C. § 77v(a) and requests an order remanding the case to Iowa District Court.

## II.  APPLICABLE STATUTES

Plaintiff asserts his suit cannot be removed to federal court based on the plain language of the Securities Act.  Section 77v(a) of the Securities Act contains a jurisdictional provision:

> The district courts of the United States . . . shall have jurisdiction . . . concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by [the Securities Act].

15 U.S.C. § 77v(a).  It also contains an anti-removal provision:

> Except as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

*Id.*  Both the jurisdictional provision and the anti-removal provision contain explicit exceptions, defined by cross-references to section 77p and subsection 77p(c) respectively.  Section 77p provides in pertinent part,

---

[2] Because the present motion concerns a pure question of law and statutory interpretation, the alleged conduct giving rise to the claims delineated in the petition need not be discussed in this order.

**(b) Class action limitations**

No covered class action based upon the statutory or common law of any State or
subdivision thereof may be maintained in any State or Federal court by any private
party alleging—

    (1) an untrue statement or omission of a material fact in connection with the
purchase or sale of a covered security; or

    (2) that the defendant used or employed any manipulative or deceptive
device or contrivance in connection with the purchase or sale of a covered security.

**(c) Removal of covered class actions**

Any covered class action brought in any State court involving a covered security,
as set forth in subsection (b), shall be removable to the Federal district court for the
district in which the action is pending, and shall be subject to subsection (b).

. . . .

**(f)(2)(A) Definitions; Covered class action; In general**

The term "covered class action" means—

    (i) any single lawsuit in which—

        (I) damages are sought on behalf of more than 50 persons or
prospective class members, and questions of law or fact common to those persons
or members of the prospective class, without reference to issues of individualized
reliance on an alleged misstatement or omission, predominate over any questions
affecting only individual persons or members; or

        (II) one or more named parties seek to recover damages on a
representative basis on behalf of themselves and other unnamed parties similarly
situated, and questions of law or fact common to those persons or members of the
prospective class predominate over any questions affecting only individual persons
or members.

15 U.S.C. § 77p.

The resolution of this motion requires the Court to interpret and apply these statutory

provisions to determine whether an action filed in state court that pleads causes of action

exclusively under federal law, i.e., the Securities Act, can be removed to federal district court.

Clerk's No. 22.

## III.  STANDARD FOR REMOVAL

### A. *General Principles*

As a general matter, "any civil action brought in a State court of which the district courts

of the United States have original jurisdiction, may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the

place where such action is pending." 28 U.S.C. § 1441(a).  "The propriety of removal thus

depends on whether the case originally could have been filed in federal court."  *City of Chicago*

*v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997).  When a

complaint raises only questions of federal law, the district courts have original jurisdiction and

the action may be filed in district court at the outset.  *See* 28 U.S.C. § 1331 ("The district

courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States.").  "[T]he federal question ordinarily must appear on the face of a

properly pleaded complaint."  *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431, 119 S. Ct. 2069,

144 L. Ed. 2d 408 (1999).

"[T]he party seeking removal has the burden to establish federal subject matter

jurisdiction, [and] all doubts about federal jurisdiction must be resolved in favor of remand."

*Baker v. Martin Marietta Materials, Inc.*, 745 F.3d 919, 923 (8th Cir. 2014) (alterations in

original) (quoting *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*,

561 F.3d 904, 912 (8th Cir. 2009)).  District courts "strictly . . . construe legislation permitting

removal."  *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007); *see* 28 U.S.C.

§ 1446.  If a removing defendant fails to strictly adhere to the procedural requirements for

removal or fails to demonstrate that the federal court unambiguously has subject matter

jurisdiction, removal is improper, and the district court must remand the case to the applicable

state court.  *See Baker*, 745 F.3d at 925–26.

## B. *Statutory Exceptions*

Although section 1441 permits any civil action over which federal courts have original

jurisdiction to be removed, that general rule does not apply where "otherwise expressly provided

by Act of Congress." 28 U.S.C. § 1441.  By its plain language, section 1441 "requires any

exception to the general removability rule to be *express*."  *Breuer v. Jim's Concrete of Brevard,*

*Inc.*, 538 U.S. 691, 697, 123 S. Ct. 1882, 155 L. Ed. 2d 923 (2003) (emphasis added).  The

Supreme Court has interpreted this explicitness requirement to mean that "whenever the subject

matter of an action qualifies it for removal, the burden is on the plaintiff to find an express

exception."  *Id.* at 698; *see* Lonny Sheinkopf Hoffman, *Burdens of Jurisdictional Proof*, 59 ALA.

L. REV. 409, 427 (2008) ("[T]he [*Breuer*] Court meant . . . that the burden ought to be on the

party who is trying to show this is one of those rare instances when Congress established a grant

of original jurisdiction without a corresponding removal right.").

Thus, when a plaintiff moves to remand a removed case, the defendant bears the burden

in the first instance of showing that the federal court has original jurisdiction over the action.  *See*

*Baker*, 745 F.3d at 925–26.  If the basis for the motion to remand is that the federal court lacks

subject matter jurisdiction, the plaintiff enjoys the presumption that "all doubts about jurisdiction

must be resolved in favor of remand."  *Id.* at 923.  But if the sole basis for the motion is an

express statutory exception that does not implicate the federal court's subject matter jurisdiction,

then the plaintiff no longer enjoys the benefit of that presumption.  The law requires only that

doubts about federal *subject matter* jurisdiction be construed in the plaintiff's favor.  *See id.*; *see*

*also Cent. Iowa Power Coop.*, 561 F.3d at 912; *Dahl*, 478 F.3d at 968.  The opposite is true with

respect to doubts about the applicability of a statutory exception to removal.  *See Breuer*, 538

U.S. at 697.

### C. *Applicable Standard*

In this case, Defendants have satisfied their burden to show that this Court has original

subject matter jurisdiction of the action.  Plaintiff does not contest that this action arises

exclusively under the laws of the United States.  *See* 28 U.S.C. § 1331.  Instead, Plaintiff requests remand based on the express statutory exception found in section 77v(a).

Under Eighth Circuit precedent, the anti-removal provision in 15 U.S.C. § 77v(a) does not implicate this Court's subject matter jurisdiction.  *See In re Norfolk S. Ry. Co.*, 592 F.3d 907, 912 (8th Cir. 2010).  The Eighth Circuit has held that analogous statutory removal bars, which provide that civil actions initiated in state courts under certain statutory schemes "may not be removed to any district court of the United States," *see* 28 U.S.C. § 1445, do not concern federal courts' subject matter jurisdiction.  *See Norfolk S. Ry.*, 592 F.3d at 911–12.  In *Norfolk*, the Eighth Circuit concluded that plaintiffs can waive the application of statutory removal bars.  *Id.* (citing *Nijhawan v. Holder*, 557 U.S. 29, 39, 129 S. Ct. 2294, 174 L. Ed. 2d 22 (2009)).  Because statutory removal bars *can* be waived and subject matter jurisdiction *cannot* be waived, statutory removal bars necessarily do not implicate federal courts' subject matter jurisdiction.  *Id.*

The Securities Act removal bar at issue in this case employs language similar to the section 1445 removal bars with identical effect: "[N]o case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  15 U.S.C. § 77v(a).  Therefore, the Eighth Circuit's analysis of the section 1445 statutory bars applies equally to the removal bar at issue in this case.  *Id.*  "Where . . . Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations."  *Nijhawan*, 557 U.S. at 39.  Though 28 U.S.C. § 1445 and 15 U.S.C. § 77v are not "adjoining provisions," *see id.*, the substantive language and operation of the removal bars are in alignment, and the Supreme Court recognizes these provisions create parallel effects.  *See, e.g.*, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386 n.15, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012); *Breuer*, 538 U.S. at 696.  The Court concludes,

therefore, that the Securities Act's anti-removal provision does not implicate federal courts' subject matter jurisdiction.[3]

Under Eighth Circuit law, therefore, Plaintiff bears the burden to affirmatively demonstrate that "Congress has 'wished to give plaintiffs an absolute choice of forum'" and set forth that wish "in unmistakable terms."  *Breuer*, 538 U.S. at 696–97 (quoting *Cosme Nieves v. Deshler*, 786 F.2d 445, 451 (1st Cir. 1986)); *see Norfolk S. Ry.*, 592 F.3d at 911–12.  In this case, Plaintiff does not directly challenge this Court's subject matter jurisdiction, and he is therefore not entitled to a presumption that remand is the proper outcome.  *Compare Breuer*, 538 U.S. at 696–97, *with Baker*, 745 F.3d at 923.  This Court will remand only if Congress has given Plaintiff full autonomy to select his own forum.  *See Breuer*, 538 U.S. at 696–97.

## III. STATUTORY INTERPRETATION

### A. *Plain Language*

For this Court to determine whether to remand the case, it must interpret 15 U.S.C. §§ 77p and 77v.  When a court interprets a statute, its primary goal is to effectuate the intent of Congress, and "[t]he starting point in discerning congressional intent is the existing statutory text."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 81

---

[3] The Court recognizes that other circuits have held the anti-removal provision to be jurisdictional in nature. *See, e.g.*, *Madden v. Cowen & Co.*, 576 F.3d 957, 965 (9th Cir. 2009).  However, "[j]urisdiction . . . is a word of many, too many, meanings."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (C.A.D.C. 1996)). The Eighth Circuit's determination that statutory removal bars do not divest federal courts of original jurisdiction over the subject matter of a case is consistent with the Supreme Court's aspiration to sharpen the precision of language in use of the term "jurisdiction": "Clarity would be facilitated if courts and litigants used the label 'jurisdictional' . . . only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004).  *But see Kircher v. Putnam Funds Trust*, 547 U.S. 633, 641–42, 126 S. Ct. 2145, 165 L. Ed. 2d 92 (2006) (discussing section 77p as conferring "removal jurisdiction").

L. Ed. 2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress.").  Therefore, "[t]he proper construction of any statute . . . begins with the language of the statute itself."  *In re Hen House Interstate, Inc.*, 177 F.3d 719, 722 (8th Cir. 1999), *aff'd sub nom. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000); *see Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 128, 111 S. Ct. 1156, 1163, 113 L. Ed. 2d 95 (1991) ("As always, we begin with the language of the statute and ask whether Congress has spoken on the subject before us."); *Braswell v. City of El Dorado, Ark.*, 187 F.3d 954, 958 (8th Cir. 1999).  "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'"  *Lamie*, 540 U.S. at 534 (quoting *Hartford*, 530 U.S. at 6).

    "In determining whether statutory language is plain and unambiguous, the court must read all parts of the statute together and give full effect to each part."  *Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 863 (8th Cir. 2011) (quoting *Estate of Farnam v. Comm'n of Internal Revenue*, 583 F.3d 581, 584 (8th Cir.2009)).  If the statute is nevertheless "susceptible to more than one reasonable interpretation," it is ambiguous; the interpreting court then "resort[s] to legislative history and any other authorities that might facilitate [its] efforts to discern Congress's intent."  *Id.* at 862–63; *see United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (concluding that when the plain language of a statute is inconclusive, "the intention of the drafters, rather than the strict language, controls"); *Harmon v. U.S. Through Farmers Home Admin.*, 101 F.3d 574, 583 (8th Cir. 1996).

In this case, Plaintiff asserts that the plain language of 15 U.S.C. § 77v(a) clearly and expressly forbids removal of this action to federal court.  Clerk's No. 22-1 at 4, 6.  The jurisdictional provision of § 77v(a) states that federal courts "shall have jurisdiction . . . concurrent with State and Territorial courts . . . of all suits in equity and actions at law" brought under the Securities Act.  15 U.S.C. § 77v(a).  The anti-removal provision states that "no case arising under [the Securities Act] and brought in any State court of competent jurisdiction shall be removed" to federal court.  *Id.*  Both provisions appear to be susceptible to a straightforward plain-language application.  However, both provisions are also subject to exceptions, and these exceptions are remarkably less clear.

As to the jurisdictional provision, state and federal courts share concurrent jurisdiction over Securities Act claims "except as provided in section 77p of [the Securities Act] with respect to covered class actions."  *Id.*  And as to the anti-removal provision, removal to federal court is prohibited "[e]xcept as provided in section 77p(c) of [the Securities Act]."  *Id.*  The scope of each exception is defined solely by cross-reference, but the substantive effect of these cross-references is not immediately evident from the plain language of the referenced sections.

The scope of the exception to the jurisdictional provision is "as provided in section 77p . . . with respect to covered class actions."  *Id.*  Section 77p, in turn, is multifaceted and broader in scope than a simple definition of a jurisdictional restriction.  *See* 15 U.S.C. § 77p. None of section 77p's six subsections expressly contemplate a distinction between state courts' and federal courts' jurisdiction.  Indeed, section 77p notes only that state and federal court jurisdiction runs parallel in some contexts.  *See* 15 U.S.C. § 77p(b), (d)(3).  Additionally, the cross-reference to section 77p is specifically "with respect to covered class actions."  15 U.S.C. § 77v(a).  However, the effect of that specification is not clear.  Section 77p(f)(2) includes a

statutory definition of the term "covered class action."  Under one definition, a covered class action is a "single lawsuit in which . . . damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class . . . predominate over any questions affecting only individual persons or members."  15 U.S.C. § 77p(f)(2).  On that basis, it is uncontested that this action is a "covered class action."

Defendants assert that the exception to the jurisdictional provision should be understood to divest state courts entirely of subject matter jurisdiction over covered class actions such as the one now before the Court.  Clerk's No. 24 at 6–9.  However, the exception does not say that state courts have concurrent jurisdiction "except with respect to covered class actions"; rather, it states that state courts have concurrent jurisdiction "*except as provided in section 77p* of this title with respect to covered class actions."  15 U.S.C. § 77v(a).  The distinction is substantive, and requires the Court construe the "respect" in which section 77p concerns covered class actions as pertinent to section 77v(a).  The Court cannot conclude that the plain language of the exception clearly divests state courts of jurisdiction over all Securities Act class actions.

The scope of the exception to the anti-removal provision is "as provided in section 77p(c)."  15 U.S.C. § 77v(a).[4]  Again, the effect of the cross-referenced statute is not discernable from its plain text.  Section 77p(c) provides that "[a]ny covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court."  This statutory text contains two additional—and now nested—cross-references.  First, subsection (c) refers to a "covered security," a term of art defined in subsection

---

[4] Of note, the exception to the jurisdictional provision cross-references section 77p as a whole, while the exception to the anti-removal provision cross-references only subsection 77p(c).  It is not immediately clear in a plain-language sense how the difference in specificity of the two cross-references should be interpreted.

77p(f)(3).  Section 77p(f)(3) in turn defines "covered security" by further cross-reference to section 77r(b).  Though this complicates the statutory language, neither party asserts there is an issue concerning the definition covered securities in the present case.

Second, and more importantly, subsection 77p(c) expressly incorporates subsection 77p(b).  It is unclear how subsection (b) should affect subsection (c) because the phrase "as set forth in subsection (b)" is grammatically ambiguous.[5]  It could adverbially modify "brought," "involv[e]," or even "shall be."  Or it could adjectivally modify "covered class action" or "covered security."  Each potential grammatical reading presents a colorable interpretation and has a different effect on the substance of the statutory text.  It is therefore unclear how subsection (b) should inform the Court's reading of subsection (c).  Plaintiff argues that the reference to subsection (b) should be interpreted to mean that only actions "based upon the statutory or common law of any State or subdivision thereof" are removable.  15 U.S.C. § 77p(b); *see* Clerk's No. 22-1 at 6.  On the other hand, Defendants argue that the reference to subsection (b) should be interpreted to mean that actions based on state law, federal law, or a combination of the two can be removed, but that state law claims must be dismissed following removal.  *See* Clerk's No. 24 at 16.  And there are other colorable interpretations; for example, the reference might indicate that only actions making certain classes of factual allegations are removable.  *See id.* § 77p(b)(1), (2).

The matryoshka cross-references contained in these provisions are at once cursory, byzantine, and imprecise.  *See Knox v. Agria Corp.*, 613 F. Supp. 2d 419, 423 (S.D.N.Y. 2009) (describing section 77p as "a labyrinthine provision").  They obfuscate the intended effects of the exceptions to the jurisdictional provision and the anti-removal provision.  The Court therefore

---

[5] Parsing a statute's prescriptive grammar is one tool courts may implement in discerning the plain-language meaning of the statutory text.  *See Ron Pair Enters.*, 489 U.S. at 241–42.

concludes that sections 77p and 77v(a) are "susceptible to more than one reasonable interpretation" and are therefore ambiguous. *Supervalu*, 651 F.3d at 862. The bare statutory language might equally be said to require, permit, or forbid removal of actions alleging exclusively Securities Act violations. *Compare* 15 U.S.C. § 77p(c), *with* 15 U.S.C. § 77v(a). Proponents of each conclusion naturally claim that the plain language of the statute supports their view. Even various district courts have held that the plain language of the statute is unambiguous, but they are inconsistent as to whether that language permits or forbids removal. *Compare, e.g.*, *Elec. Workers Local #357 Pension v. Clovis Oncology, Inc.*, 185 F. Supp. 3d 1172, 1183 (N.D. Cal. 2016) (holding the plain language of the statute required remand), *with Rovner v. Vonage Holdings Corp.*, No. 3:07-cv-00178, 2007 WL 446658, at *3, *5 (D.N.J. Feb. 7, 2007) (holding the plain language of the statute foreclosed remand). The Court concludes it cannot resolve the question of the propriety of removal by reference to the plain language of the statute alone. The inconsistency in other courts' rulings supports the conclusion that Congress's intent cannot be determined merely from the words of the statute. Therefore, the Court must turn to legislative history, persuasive case law, and "any other authorities that might facilitate [its] efforts to discern Congress's intent." *Supervalu*, 651 F.3d at 863.

## B. *Congressional Intent*

Divining Congress's intent on the question of removability of Securities Act actions has proven to be an elusive exercise for district courts, and there is no uniformity amongst them as to the propriety of removal or remand. The district courts have received no guidance from the circuit courts of appeal or the United States Supreme Court[6] due to procedural and pragmatic

---

[6] Plaintiff suggests that one Supreme Court case aids its analysis: *Kircher v. Putnam Funds Trust*, 547 U.S. 633. In *Kircher*, the Court considered whether federal or state courts had jurisdiction over a class action based only on state law in light of 15 U.S.C. § 77p(b) and (c). 547 U.S. at 637, 643–44. Because the present case concerns an action based only on *federal* law, however, this Court is not faced with the same

roadblocks that prevent appellate review of the issue.  If a district court concludes it must remand a Securities Act action to state court, the remand order "is not reviewable on appeal or otherwise."  28 U.S.C. § 1447(d).  If a district court concludes that it should retain the case, the order denying remand cannot be appealed until that court has finally adjudicated the case.  *See* 28 U.S.C. § 1291.  Plaintiff's counsel has represented to the Court that, realistically speaking, such cases almost always settle prior to final judgment.  *See* Clerk's No. 38 at 41.  As a result, interpretation of sections 77p and 77v(a) has thus far been left to the province of the district courts.

Plaintiff has provided a list of thirty-seven district court rulings addressing this issue since 2009.  Of those thirty-seven cases, Plaintiff notes, twenty-eight have remanded to state court, and only nine have retained jurisdiction over the case.  *See* Clerk's No. 28-1 (collecting cases).  Therefore, Plaintiff argues, there is a majority disposition, which requires remand to state court.  Defendants retort that simply counting the number of cases skews the reality of the divide.  *See* Clerk's No. 38 at 30–32.  The better analytic course, they argue, is to compare the number of jurisdictions in which a motion to remand will be granted to the number of jurisdictions in which such a motion will be denied.  *Id.*  By Defendants' count, a majority of the district courts within the Second, Third, Fourth, Fifth, Sixth, and Tenth Circuits will deny a motion to remand; and a

---

issue of section 77p(b) preemption of *state* law claims.  *Kircher* is therefore not assistive in determining whether Securities Act lawsuits can be remanded to state court.  The Court is also aware of one other Supreme Court case that might bear upon the issue now before it: *Cyan, Inc. v. Beaver County Employees Retirement Fund*, ___ S. Ct. ___, No. 15-1439, 2017 WL 2742824 (June 27, 2017).  On June 27, 2017, the Supreme Court granted certiorari in *Cyan*.  *Id.*  The petition for writ of certiorari frames the sole question presented as "[w]hether state courts lack subject matter jurisdiction over covered class actions that allege only [Securities] Act claims."  Petition for Writ of Certiorari for Petitioner, *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, ___ S. Ct. ___ (No. 15-1439), at i.  Because the Supreme Court will not reach this question until its next term, this Court is compelled to decide the motion before it at this time.

majority of the district courts within the First, Seventh, Ninth, and Eleventh Circuits will grant a motion to remand.  *Id.* at 32.

Regardless of the manner in which the divide is drawn, "the split in the case law demonstrates [that] the legislative intent behind § 77v(a) is hard to understand."  *Fortunato v. Akebia Therapeutics, Inc.*, 183 F. Supp. 3d 326, 332 (D. Mass. 2016).  The Court begins its analysis, as many other district courts have done, with the legislative history of the provisions in question.  *See, e.g.*, *Gaynor v. Miller*, 205 F. Supp. 3d 935, 941 (E.D. Tenn. 2016); *Clovis Oncology*, 185 F. Supp. 3d at 1183; *Fortunato*, 183 F. Supp. 3d at 328–29; *Northumberland Cty. Ret. Sys. v. GMX Res., Inc.*, 810 F. Supp. 2d 1282, 1286 (W.D. Okla. 2011); .

The Securities Act of 1933 first became law on May 27, 1933.  *See* Securities Act of 1933, Pub. L. No. 73–22, 48 Stat. 74; *see also* James M. Landis, *The Legislative History of the Securities Act of 1933*, 28 GEO. WASH. L. REV. 29, 49 (1959).  The jurisdictional provision and the anti-removal provision were not subject to any exceptions in the original statutory language.  *See* Pub. L. No. 73–22 § 22(a), 48 Stat. at 86–87.  And the provisions today found at 15 U.S.C. § 77p(b) and (c) did not exist in the original legislation.  *See id.* § 16, 48 Stat. at 84.  Therefore, it is clear that the 1933 Congress spoke plainly to the specific question now before the Court: plaintiffs had full and express autonomy in selecting their forum when bringing a suit alleging violations of the Securities Act.

The relevant statutory language remained untouched until 1998, when Congress passed the Securities Litigation Uniform Standards Act ("SLUSA").  Pub. L. No. 105–353 § 101, 112 Stat. 3227, 3227–30.  The SLUSA introduced subsections 77p(b), (c), and (f).  *Id.*  It also amended subsection 77v(a) to include the exceptions to the jurisdictional and anti-removal provisions and labeled those additions "conforming amendments."  *Id.* § 101(3), 112 Stat. at

3230.  The Court must therefore determine whether the 1998 Congress intended to reverse

course from the 1933 Congress's explicit order "to make federal claims instituted in state court

nonremovable."  *See Mims*, 565 U.S. at 386 n.15.

Congress issued findings that elucidate, at least in part, its intentions in enacting the

SLUSA.  Pub. L. No. 105–353 § 2, 112 Stat. at 3227.  Congress found,

> (1) the Private Securities Litigation Reform Act of 1995[7] sought to prevent abuses in private securities fraud lawsuits;
> (2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts;
> (3) this shift has prevented that Act from fully achieving its objectives;
> (4) State securities regulation is of continuing importance, together with Federal regulation of securities, to protect investors and promote strong financial markets; and
> (5) in order *to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits* involving nationally traded securities, *while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits*.

*Id.* (emphasis added).

These findings indicate Congress intended for the SLUSA to "enact national standards

for securities class action lawsuits."  *Id.*  The purpose of the national standards was "to

prevent . . . State private securities class action lawsuits alleging fraud" from proceeding in state

courts.  *Id.*  At the same time, Congress expressly desired to "preserv[e] the appropriate

enforcement powers of State securities regulators."  *Id.*  The findings therefore indicate that

Congress unquestionably intended to permit states to continue regulating securities transactions,

but it also intended to prevent *class action* lawsuits from proceeding under state securities laws.

---

[7] Pub. L. 104-67, 109 Stat. 737.

However, it is not clear from the language of the findings whether the purported "national standards" the SLUSA was meant to establish were intended to require all securities class action lawsuits to be controlled by federal substantive *law* or to also require that they be litigated in a federal *forum*. If Congress intended to establish the federal forum as the exclusive forum for securities class actions, then the exceptions to the jurisdictional and anti-removal provisions of section 77v(a) should be understood to divest state courts of jurisdiction over Securities Act class actions and to require removal of such cases from state to federal courts. However, if Congress merely intended to establish federal *law* as the national standard of all securities class actions, the exception to the jurisdictional provision should be understood to divest state courts of jurisdiction over state law class actions only, and the anti-removal provision should continue to prevent removal of Securities Act class actions.

In support of their respective positions on this question, the parties point to competing statements from various congressional reports, Congresspeople, and even President Clinton, who signed the SLUSA into law. *See* Clerk's Nos. 22-1 at 11–13, 24 at 12. Plaintiff points out that congressional reports from three committees—the Senate Committee on Banking, Housing and Urban Affairs; the House of Representatives Committee on Commerce; and the committee of conference on disagreements between the two houses on proposed amendments to the bills— each describe the purpose of the legislation as "limiting the conduct of securities class actions *under State law*." *See* Sen. Rep. No. 105–182, 1; H.R. Rep. No. 105–640, 1; H.R. Conf. Rep. No. 105–803, 1. Defendants, on the other hand, call the Court's attention to different language in the committee of conference's report, which states that the SLUSA "makes Federal court the exclusive venue for most securities class action lawsuits." H.R. Conf. Rep. No. 105–803, 13. Defendants also rely on statements by four individual Congresspeople as well as President

Clinton's signing statement, which explained, "[T]he uniform standards provided by this legislation state that class actions generally can be brought only in Federal court, where they will be governed by Federal law." *Statement on Signing the Securities Litigation Uniform Standards Act of 1998*, 34 Weekly Comp. of Pres. Doc. 2247, 2248 (1998) (hereinafter *Signing Statement*); *see* Clerk's No. 24 at 12 & nn.13, 14.

Insofar as the parties' cited reports and statements are informative in ascertaining Congress's intent, the Court concludes Plaintiff's reading of these sources is more persuasive. On the whole, the reports and statements are consistent in their assertions that federal substantive law must control securities class actions. They are *not* consistent in asserting that federal courts will be the required forum for securities class actions. Many statements suggest that the federal forum will be the *predominate* one; however, they stop short of claiming that *all* securities class actions must be litigated in federal court and therefore implicitly contemplate that some securities class actions will survive to be litigated in state courts. *See* H.R. Conf. Rep. No. 105–803, 13 (noting that federal court will be "the exclusive venue for *most* securities class action lawsuits" (emphasis added)); *Signing Statement*, 34 Weekly Comp. of Pres. Doc. at 2248 (stating that the passage of the SLUSA meant that "class actions *generally* can be brought only in Federal court" (emphasis added)). These implications are, of course, not controlling, but they do indicate there was no consensus that securities class actions would be relegated to an exclusive forum. As to the individual statements of Congresspeople asserting that the SLUSA makes federal court the exclusive venue for securities class actions, such statements only support the notion that there was no consensus. Contrary to Defendants' request, the Court cannot impute an individual Congressperson's representations of the effect of legislation to the institutional intent of both houses of Congress.

In other respects, the circumstantial indicators of Congress's intent are in equipoise.

Each party levels fair criticism against the other's proposed interpretation of the statute.  For

example, Plaintiff argues that if Congress had intended to divest state courts of jurisdiction, it

knew how to do so and would have done so in plainer terms.  Clerk's No. 22-1 at 13; *see Clovis*

*Oncology*, 185 F. Supp. 3d at 1184 ("Congress could have easily provided that federal courts

have exclusive jurisdiction over securities class actions, but it did not do so."); *In re Waste*

*Mgmt., Inc. Sec. Litig.*, 194 F. Supp. 2d 590, 596 (S.D. Tex. 2002) ("Congress could easily have

made a statement in SLUSA expressly modifying this provision had it so intended.").  Plaintiff

further argues Defendants' interpretation of the statute requires evaluation of individual elements

of the law in isolation, contrary to proper statutory construction, which interprets statutory

schemes holistically.  *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 643, 126 S. Ct. 2145,

165 L. Ed. 2d 92 (2006) ("[W]e do not read statutes in little bites."); *see also Koons Buick*

*Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60, 125 S. Ct. 460, 160 L. Ed. 2d 389 (2004).

Defendants, on the other hand, argue that Congress's amendments in fact were

sufficiently explicit and that Plaintiff's interpretation of the statutes renders superfluous the

SLUSA's exceptions to the jurisdictional and anti-removal provisions in section 77v(a).  Clerk's

No. 24 at 13, 17; *see GMX Res.*, 810 F. Supp. 2d at 1287 ("Plaintiffs' interpretation reduces

SLUSA's amendment of the jurisdictional provision to mere surplusage . . . ."); *Rovner*, 2007

WL 446658, at *4 ("If Congress had indeed intended to limit the exception to non-removability

to state law claims of the type described in section 77p(b), then that section read in conjunction

with section 77p(c) accomplishes that purpose without any amendment to section 77v(a)."); *see*

*also Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106, 131 S. Ct. 2238, 180 L. Ed. 2d 131

(2011) ("[T]he canon against superfluity assists only where a competing interpretation gives

effect 'to every clause and word of a statute.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174,

121 S.Ct. 2120, 150 L. Ed. 2d 251 (2001))). *But see Lamie*, 540 U.S. at 536 ("Surplusage does

not always produce ambiguity and our preference for avoiding surplusage constructions is not

absolute."); *Chickasaw Nation v. United States*, 534 U.S. 84, 89, 122 S. Ct. 528, 151 L. Ed. 2d

474 (2001) ("We agree with [the plaintiffs] that rejecting their argument reduces [a statutory]

phrase . . . to surplusage.  Nonetheless, we can find no other reasonable reading of the statute.").

The parties' arguments on these points demonstrate a common predicament in statutory

construction: "Canons of construction . . . are often countered, of course, by some maxim

pointing in a different direction."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115, 121 S.

Ct. 1302, 149 L. Ed. 2d 234 (2001).  In this case, as a result, the Court perceives limited value in

relying on the canons of construction because they reveal defects in equal measure in either

interpretation of the statute.

### C. *Conclusion*

Ultimately, the Court must determine whether Congress intended for the SLUSA to either

divest state courts of jurisdiction over Securities Act class actions or to abrogate the removal bar

for such actions.  The SLUSA itself defies courts to apprehend the intentions behind it; as one

district court described the statute, it is "inartfully (or even inaccurately) worded."  *Brody v.

Homestore, Inc.*, 240 F. Supp. 2d 1122, 1123 (C.D. Cal. 2003).

The Court concludes that Congress, through the SLUSA, certainly intended to require

that all securities class actions be controlled by federal law, i.e., the Securities Act.  That intent is

clear from the congressional findings delineated in the law. Pub. L. No. 105–353 § 2, 112 Stat.

at 3227.  However, the Court also concludes that Congress did *not* have the explicit intention to

require that all securities class actions be litigated in a federal forum.  Importantly, this is not

equal to concluding that Congress had the deliberate intent to *permit* state courts to hear Securities Act claims.  Rather, the language and legislative history of the SLUSA indicates that the 1998 Congress enacted that law devoid of a unified intent on the narrow question presently before the Court.

"If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention *on the precise question at issue*, that intention is the law and must be given effect."  *Chevron*, 467 U.S. at 843 n.9 (emphasis added).  But in this case, the Court has determined that Congress, though it had a clear intention on the matter of controlling law in securities class actions, had no cognizable intention on the precise question of an exclusive forum for Securities Act class actions in enacting the SLUSA.  This is not to say that establishing federal courts as the exclusive forum would be inconsistent with Congress's goal, or even that it would not have been better for Congress to have done so.  But it is not the province of the courts to attempt to improve legislation post hoc by interpretation; the courts' "sole function . . . is to enforce [legislation] according to its terms."  *Lamie*, 540 U.S. at 534.

Because Congress did not have an institutional intent as to whether Securities Act class actions remain subject to state courts' concurrent jurisdiction, the SLUSA did not disturb the status quo on the question.  The status quo is the 1933 Congress's express grant of concurrent jurisdiction to "State and Territorial courts . . . of all suits in equity and actions at law brought to enforce any liability or duty created by [the Securities Act]."  15 U.S.C. § 77v(a); *see* Pub. L. No. 73–22, 48 Stat. 74.  From the outset of the Securities Act, Congress "wished to give plaintiffs an absolute choice of forum," and did so "in unmistakable terms."  *Breuer*, 538 U.S. at 696–97 (quoting *Cosme Nieves*, 786 F.2d at 451); *see also Cosme Nieves*, 786 F.2d at 451 n.19.

The Court must interpret the statutory provisions at issue in this case to give effect to the intent of the 1998 Congress in enacting the SLUSA and to the intent of the 1933 Congress where the SLUSA did not modify the law.  To that end, the Court understands the exception to the jurisdictional provision as divesting state courts of jurisdiction over covered class actions that are based in any part on the statutory or common law of any state.  *See* 15 U.S.C. §§ 77p(b), 77p(c), 77v(a).  Likewise, the exception to the anti-removal provision permits removal of covered class actions that are based in any part on the statutory or common law of any state.  *Id.*  Therefore, this action, which alleges only federal law, i.e., Securities Act, violations, remains subject to concurrent state court jurisdiction and may not be removed to federal court.  Plaintiff has satisfied his burden as the movant, and the Court must grant the motion to remand.[8]

## IV.  ORDER

Plaintiff has demonstrated that this action, "arising under [the Securities Act] and brought in a State court of competent jurisdiction," cannot be removed to federal court.  15 U.S.C. § 77v(a).  Accordingly, Plaintiff's Motion to Remand (Clerk's No. 22) is GRANTED.  The case is remanded to the Iowa District Court for Johnson County.

IT IS SO ORDERED.

Dated this 17th day of July, 2017.

ROBERT W. PRATT, Judge
U.S. DISTRICT COURT

---

[8] Defendants assert the outcome of the Court's ruling is "absurd."  Clerk's No. 24 at 4; *see* Clerk's No. 38 at 24, 30.  That assertion is based on Defendants' conclusion that the SLUSA was "specifically intended to *ensure* the litigation of certain class action claims in federal court."  Clerk's No. 24 at 4.  However, the Court has concluded that this action is not one of the class actions Congress requires to be litigated in federal court—i.e., securities class actions based in any part on *state* law.  In light of that holding and the similar holdings of many other district courts, the Court rejects the notion that its ruling creates an absurd result. *See, e.g., Clovis Oncology*, 185 F. Supp. 3d at 1183-84; *Carlson v. Ovascience, Inc.*, 189 F. Supp. 3d 185, 187 (D. Mass. 2016); *Fortunato*, 183 F. Supp. 3d at 328–29.